UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OURPET'S COMPANY, | ) | |
| | ) | Case No. 1:13CV01018 |
| Plaintiff, | ) | |
| | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| PETEDGE, INC., | ) | **AND ORDER ON MOTION TO** |
| | ) | **DISMISS** |
| Defendant. | ) | |

This matter is before the Court on Defendant PetEdge, Inc.'s ("PetEdge") Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer (ECF #5). Plaintiff OurPet's Company ("OurPet's") has responded to the Motion, and PetEdge has replied. Thus, the Motion is ripe for consideration. For the reasons stated herein, the Defendant's requests to either dismiss this case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or to transfer venue, are DENIED.

I. FACTS

Plaintiff OurPet's designs, manufactures, and markets a wide range of products for the pet industry. OurPet's owns numerous utility patents, design patents, patent applications pending, trademarks, and copyrights on its products. OurPet's sells its products worldwide from its headquarters in Fairport Harbor, Ohio (Lake County).

Defendant PetEdge competes with OurPet's in some respects. Like OurPet's, PetEdge also designs, sources, manufactures, and distributes pet-related products.

OurPet's brings this case for patent infringement. OurPet's asserts that PetEdge has infringed two of its patents, specifically, Utility Patent No. 8,286,589, and Design Patent No. D565,253. The '589 utility patent pertains to a pet food bowl with a non-skid rubber-bottomed surface, which was issued by the United States Patent and Trademark Office on October 16, 2012, and related back to a provisional application filed on March 31, 2000. The '253 patent is a design patent on a pet bowl with a non-skid lower surface.

PetEdge is a Massachusetts corporation based in Beverly, Massachusetts. Other than warehouses in Billerica, Massachusetts, and Reno, Nevada, PetEdge has no other facilities in the United States. PetEdge has no stores, offices, warehouses, or any other facilities in Ohio. PetEdge does not have any employees, representatives, or independent contractors who live or are based in Ohio.

The accused dog bowls sell for an average of $3.28 per unit. The bowls are manufactured in China, and are sold from PetEdge's headquarters in Beverly, Massachusetts. PetEdge processes all orders for the accused dog bowls from its headquarters in Massachusetts. PetEdge's advertising and marketing for the accused dog bowls and its other products do not specifically target Ohio consumers. PetEdge sells its products through its websites and print catalogs, as well as through an in-house direct sales force based in Massachusetts, but does not specifically target consumers in Ohio.

PetEdge does sell the accused dog bowls in Ohio, and has done so since at least 2010. In 2010, 2011, and 2012, PetEdge generated 1.15%, 1.52%, and 1.30% respectively, of its total sales of the accused dog bowls from customers in Ohio. In 2013 (as of the date Plaintiff's Response to the Motion to Dismiss was filed), PetEdge has generated .68% of its sales of the

accused dog bowls from customers in Ohio. PetEdge's overall sales for all of its products to customers in Ohio over the last three years has averaged 3.5% of its total gross sales nationwide.

In 2009, PetEdge appeared (apparently without objection to personal jurisdiction or venue) in a previous, unrelated lawsuit in this Court and before this Judge. OurPet's had filed that lawsuit in the United States District Court for the Northern District of Ohio against PetEdge and another company. The prior suit related to allegations of patent infringement, trademark infringment, and unfair competition. *See* Case No. 1:09CV1458-DCN.

PetEdge first appeared in the previous lawsuit on July 27, 2009 by filing a Corporate Disclosure Statement. PetEdge waived service in the prior case. PetEdge's counsel filed motions to appear *pro hac vice* in that case. PetEdge filed a motion to attend the Case Management Conference via telephone; PetEdge's Boston counsel appeared by phone, with local counsel from the law firm Baker & Hostetler appearing in person. PetEdge also submitted a Joint Report of Parties' Planning Meeting in advance of the CMC. Subsequent to the CMC, PetEdge and OurPet's entered into a settlement agreement on or about October 15, 2009, and OurPet's dismissed the prior case.

## II. DISCUSSION

A. **Personal Jurisdiction**

Defendant PetEdge, in its Motion to Dismiss, claims that personal jurisdiction is lacking for two reasons: (1) because Ohio's long-arm statute, Ohio Revised Code § 2307.382, does not confer jurisdiction on the Court, and (2) an exercise of jurisdiction would violate the Due Process Clause of the United States Constitution. OurPet's responds by arguing that personal jurisdiction exist, and that Defendant waived the right to contest personal jurisdiction when it appeared in the

prior case. Because the Court finds that personal jurisdiction exists under Ohio's long-arm statute and constitutional due process requirements, the Court need not reach the waiver issue.

A two-step analysis is required to determine whether personal jurisdiction exists over a defendant. First, the Court determines whether personal jurisdiction is proper under the forum state's long-arm statute. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). If the long-arm statute is satisfied, the Court must determine whether the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. *Id.*

While it is true that the plaintiff bears the burden to show that personal jurisdiction exists, the burden is relatively slight when the Court relies only on written submissions and affidavits, as it does here. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Under these circumstances, the plaintiff must make only a prima facie showing that personal jurisdiction exists. *Id.* The Court must view the pleadings and affidavits a light most favorable to the plaintiff, and when the Court disposes of a Rule 12(b)(2) motion without an evidentiary hearing, it does not weigh controverting facts offered by the defendant. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996).

1. **Long-Arm Jurisdiction**

The first issue is whether personal jurisdiction is proper under Ohio's long-arm statute, Ohio Revised Code § 2307.382. In pertinent part, the statute provides that personal jurisdiction over a non-resident defendant exists as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons:
> (1) Transacting any business in the state;

> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; ***
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code § 2307.382(A).

The long-arm statute explicitly provides under § 2307.382(A)(1) that transacting *any* business in Ohio is sufficient to establish personal jurisdiction over Defendant in this State. Although this section is broadly worded, whether "any business" is transacted in Ohio should be resolved according to the facts of a particular case. *Clark v. Connor*, 82 Ohio St.3d 309, 312 (Ohio 1998). Here, the facts – uncontested by PetEdge – demonstrate that PetEdge's overall sales for all of its products to customers in Ohio over the last three years average 3.5% of PetEdge's total gross sales nationwide. This is more than enough for a *prima facie* showing that personal jurisdication exists under section (A)(1) of the long-arm statute. Although PetEdge contends that 3.5% of total gross national sales is insignificant, PetEdge has failed to provide any evidence to substantiate this statement. Particularly given PetEdge's claim that it sells thousands of different pet-related products, it is quite possible that 3.5% of PetEdge's total gross national sales represents a significant amount of money being generated by sales in Ohio. To dismiss this case for lack of personal jurisdiction without evidence of the dollar value of Ohio sales would be

premature and contrary to the express language of the long-arm statute.[1]

Moreover, the fact that 3.5% of PetEdge's gross national sales have occurred in Ohio over the last three years establishes that PetEdge has contracted to supply goods in this state. Accordingly, long-arm jurisdiction exists also under § 2307.382(A)(2).[2]

### 2. Due Process

Having determined that Ohio's long-arm statute confers personal jurisdiction over PetEdge, the Court must now analyze whether exercising such jurisdiction comports with Fourteenth Amendment Due Process. The Due Process inquiry examines whether a nonresident defendant has sufficient contacts with the forum state such that the Court's exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Patterson*, 89 F.3d at 1263 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit has translated this general rule into three criteria: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Patterson*, 89 F.3d at 1263.

---

[1] As of the time this motion became ripe for consideration, OurPet's had requested but not received PetEdge's sales numbers.

[2] The authority cited by PetEdge in opposition to long-arm jurisdiction is inapposite, as it either does not discuss Ohio's long-arm statute, pertains to sub-parts of § 2307.382(A) that are not at issue here, or relies on dollar (not percentage) sales figures that show negligible or insignificant sales in Ohio.

a.  **Purposeful Availment**

The purposeful availment requirement asks whether the defendant purposefully established "minimum contacts" in the forum state and whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This "ensures that a defendant will not be haled into a foreign jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted).

PetEdge contends it did not purposefully avail itself of the privilege of doing business in Ohio: it has no stores, offices, or property in Ohio, and its advertising and marketing do not specifically target Ohio residents. OurPet's, on the other hand, contends that PetEdge purposefully availed itself of Ohio law by choosing to sell and ship its products to Ohio residents.

The Court agrees with OurPet's. Indeed, PetEdge's products are available through numerous retailers throughout Ohio. Moreover, PetEdge's website (which Defendant specifically brought to the Court's attention in PetEdge's Motion to Dismiss) appears to be active rather than passive, and permits Ohio users to place orders for its products, to store personal account information, to register a username and password, to access customer service, and to ship products to different states, including Ohio. Websites with similar features have been found to satisfy the purposeful availment requirement. *See, e.g., Solar X Eyewear, LLC v. Bowyer*, 2011 WL 3418306 (N.D. Ohio Aug. 4, 2011); *Wood v. 1–800–Got–Junk?, LLC*, 2007 WL 895008 (S.D. Ohio March 22, 2007); *V Secret Catalogue v. Zdrok*, 2003 WL 22136303 (S.D. Ohio Aug. 29, 2003); *Bath and Body Works*, 2000 WL 1810478 (S.D. Ohio Sept. 12, 2000).

As to PetEdge's assertion that its Ohio sales constitute only fraction of its company-wide revenue, the Court is guided by the Sixth Circuit's opinion in *Patterson*: "It is the quality of the contacts, and not their number or status, that determines whether they amount to purposeful availment." *Patterson*, 89 F.3d at 1265 (internal quotations and citations omitted). In that case, the Sixth Circuit rejected the district court's reliance on the *de minimis* amount of sales the defendant made in Ohio and noted, "Patterson's contacts with Compuserve here were deliberate and repeated, even if they yielded little revenue from Ohio itself." *Id.*

The Court therefore finds that the facts, when viewed in the light most favorable to OurPet's, support a finding that PetEdge purposefully availed itself of the privilege of doing business in Ohio. To be certain, Defendant admits that, over the last three years, 3.5% of its nationwide sales were made in Ohio. Defendant knowingly sold its products to Ohio purchasers.

      b.    **Cause Of Action Arises From Defendant's Activities**

The Court next inquires whether the cause of action here arises from Defendant's activities in Ohio. PetEdge admits that it has sold approximate 1.52% of the feeding and drinking bowls at issue to customers in Ohio. Conspicuously, PetEdge omits any information concerning the dollar value of these sales to Ohio customers. Under these facts, the Court is persuaded that sales of the accused dog bowls in Ohio contribute substantially enough to the cause of action to satisfy Due Process considerations.

      c.    **Substantial Connection**

The last prong of the Due Process inquiry asks whether Defendant's acts, or consequences caused by Defendant, have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. Usually an inference arises that this requirement is met when the first two

requirement are met. *Bird v. Parsens,* 289 F.3d 865, 875 (6th Cir. 2002). Still, the Court should consider several factors, including the burden on Defendant, the interest of the forum state, Plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies. *Id.*

PetEdge may be burdened by having to defend a lawsuit in Ohio, but it knew when it sold products to Ohio customers that it was making a connection with Ohio, and there is nothing to suggest that PetEdge will be unable to defend itself in this forum. Indeed, PetEdge's participation in a prior case in this Court and before this Judge weigh heavily against any argument to the contrary. PetEdge did not contest personal jurisdiction in that case, and did not make an argument that defending the lawsuit in Ohio was unduly burdensome.

Further, OurPet's of course has a significant interest in obtaining relief in its home state. More importantly, Ohio has a legitimate interest in protecting its companies from patent infringement behavior; PetEdge's home state of Massachusetts does not have an overriding interest. For these reasons, the Court finds that PetEdge has a substantial enough connection with Ohio that an exercise of jurisdiction is reasonable.

**B.** <u>Venue</u>

PetEdge, in its Motion, requests a transfer of venue to the United States District Court for the Northern District of Massachusetts as an alternative to dismissal for lack of personal jurisdiction. PetEdge argues that transfer is warranted because its headquarters, employees, and files are in Massachusetts, and it therefore would be inconvenient and burdensome to litigate in the Northern District of Ohio.

Under 28 U.S.C. § 1404(a), a court may transfer any civil action to any other district or

division where the action may have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice. . ." Ultimately, the decision whether to transfer venue is committed to the sound discretion of the trial court. *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp.1316, 1318 (S.D. Ohio 1991).

The Sixth Circuit has summarized 28 U.S.C. § 1404(a) to mean that a court should "consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interest of justice.' " *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991).

Transfer is not appropriate if the transfer merely shifts the burden of inconvenience. *Twenty First Century Communications, Inc. v. TechRadium, Inc.*, No. 2:09CV1118, 2010 WL 3001721 at *3 (S.D. Ohio Jul. 30, 2010). Further, there is a strong presumption in favor of a plaintiff's choice of forum. *Id.* Therefore, a defendant wishing to transfer venue has the burden to demonstrate that the balance of the factors to be considered strongly favors transfer. *Id.*

Here, transfer of venue would merely shift the burden of inconvenience to OurPet's. If it is inconvenient for PetEdge to litigate in Ohio, it would be equally inconvenient for OurPet's to litigate in Massachusetts. All of OurPet's witnesses and records are in Ohio. Thus, transfer of venue would be inappropriate. PetEdge's request to transfer this case to the Northern District of Massachusetts is denied.

## III. CONCLUSION

For all of the foregoing reasons, PetEdge's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer (ECF #5) is DENIED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: September 10, 2013